**William H. SPRING**
**and**
**Betty K. SPRING**
**V.**
**Irving M. FELDMAN**

**No. 80-129**

Superior Court/Hampden, ss.
Commonwealth of Massachusetts

**June 29, 1982**

</div>

**John E. Barrett,** counsel for the plaintiff. **Merwyn J. Burstein,** counsel for the defendant.

## MEMORANDUM OF DECISION

Apparently anticipating the ruling in **Dunham v. Ware Savings Bank,** Mass. Adv. Sh. (1981) 1607 (mortgage due-on-sale clauses are not a restraint on alienation and are thus valid and enforceable), the parties here engaged in some creative financing of their own to avoid the effect of such a clause. This case is the result.

William and Betty Spring ("the Springs") own a four-family residence at

590-594 Union Street, Springfield, subject to a mortgage held by the United Cooperative Bank. The Springs had an interest in this property since the early 1970's and leased each of the dwelling units and collected the rents therefrom. On or about 1977, the Springs entered into a purchase and sale agreement with Irving M. Feldman ("Feldman") for the sale of the Union Street property to him. The United Cooperative Bank refused to permit a conveyance of this property without calling the entire balance due on the mortgage it held.

Faced by this dilemma, the Springs and Feldman entered into an "escrow agreement", so-called, drafted by the Springs' attorney. The agreement required the Springs to deliver the deed to the premises to their attorney who was to hold it in escrow. The Springs were also to grant a second mortgage on the premises to Feldman and to assign to him the fire insurance and hold him harmless from any claims pertaining to the premises which existed prior to February 18, 1977 - the date of execution of the escrow agreement. For his part, Feldman was to give to the Springs the monies necessary to pay the mortgage and was to "take over the operation of said real estate...and...manage and own same as if the aforesaid deed had been delivered and recorded. He shall collect all the rents, he shall contract with all tenants, he shall pay all the expenses of the operation of the property, and he shall do whatever he would have done as if the deed had been delivered and recorded as if he were the true legal owner of the property." Moreover, Feldman was to hold the Springs harmless from any claim whatsoever pertaining to the real estate arising subsequent to February 18, 1977. Feldman's indemnity agreement is, however, oddly qualified to provide that "if said claim is not resolved and court proceedings are instituted and there is insufficient insurance or other substantial indemnification to protect the aforesaid sellers from the aforesaid claim or claims, then [the attorney] shall forthwith record the said deed dated February 8, 1977, and the said Irving M. Feldman shall be at his sole risk and peril."

Feldman has breached the agreement, failing both to "pay all the expenses of the operation of the property" and failing to indemnify the Springs for claims against them personally arising out of the operation of the property. As a consequence, the qualification to the indemnity agreement just quoted above is at the nub of this dispute. For their part, the Springs failed to assign the fire insurance on the premises to Feldman and, a fire having gutted the building on October 1, 1979, the Springs have been paid proceeds of the insurance in the approximate amount of $9,750.00, a sum which Feldman claims as his. This law suit thus reduces to a dispute over the proceeds of this fire insurance policy, the building itself having been virtually abandoned. These proceedings are, therefore, in the nature of an accounting among the parties.

Subsequent to February 18, 1977, the Springs incurred the following expenses on account of these premises:

| | |
|---|---:|
| Redemption of tax title taken by City due to Feldman's failure to pay the real estate taxes, and related costs | $432.80 |
| Second half fiscal 1979 taxes and penalties | 163.05 |
| First half fiscal 1980 taxes and penalties | 334.28 |
| Water and sewer charges unpaid by Feldman | 187.60 |
| Expenses, permits, utilities shut off attendant upon demolition of the building after the fire pursuant to order the City Building and Housing Code Enforcement Department | 1,862.00 |
| Mortgage payments | 2,825.00 |
| Liability insurance (August, 1977-October, 1979) | 311.00 |

Feldman argues that the Springs breached the escrow agreement by failing to assign to him the fire insurance contract upon which he had faithfully paid the premiums subsequent to the execution of the agreement. He claims the entire proceeds paid by the insurance company to the Springs without any offset. This he rationalizes by construing his indemnity agreement to be limited to having the escrow agent transfer record title to him, thus assuming the risk that the municipal authorities and all other claimants would proceed against the property.[1] This is hardly a frivolous argument. The draftsmanship here is sloppy and the words used murky in the extreme. For three reasons, however, this court rules that the Springs are entitled to be reimbursed for the funds they were personally obligated to expend as a result of Feldman's breach of his contractual undertaking in order to meet their continuing personal contractual obligation on the mortgage note and their legal obligation to pay taxes, water and sewer charges, and demolition expenses, all of which continued to be their personal obligations inasmuch as they continued at all material times as the record owners of the real estate.

First, the qualifying language of Feldman's indemnity causing the deed to be recorded and the land formally transferred to him comes into play only "if said claim [against the Springs arising out of the operation of the real estate] is not resolved and court proceedings are instituted and there is insufficient insurance or other substantial indemnification to protect [the Springs]". Here there is sufficient insurance to protect the Springs - the proceeds of the fire insurance policy. Feldman argues that even if the contract is construed in this fashion, however, the Springs have no right to the insurance proceeds until "court proceedings are instituted" upon the claims for which they seek indemnity. Here the Springs paid out their own funds rather than see the mortgage foreclosed, tax title taken by the City, and before suf-

fering the penal sanctions attendant upon the failure to demolish the burned out building upon proper municipal order. This court rules that such conduct was proper and reasonable under the circumstances. Redemption of the tax title, payment of the back taxes and the water and sewer bills by the Springs were not made until February 22, 1980, long after Feldman had an opportunity to perform pursuant to his contractual obligation and failed to do so. Moreover, such payments were only made after fire had gutted the building and it had been wholly abandoned and demolished. Since the value of the land alone as of January 1, 1978 was only $930.00, this court infers that a failure to pay the municipal charges (which would have resulted in first a lien and ultimately a tax taking by the City and suit by the bank on the mortgage note) and the mortgage (which would have resulted in foreclosure), would have necessarily caused a deficiency on the mortgage note. At common law indemnity is available to a party who properly pays rather than waiting for his legal obligation to become fixed after suit. This contractual obligation ought have no more strict construction. Indeed, it would be against public policy to require the Springs to default upon their civic duty to pay taxes and water and sewer charges appropriately assessed to them, to frustrate a proper building demolition order designed to secure the health and safety of the citizens of Springfield, and to breach their contract with the bank and force the bank to clog the courts with litigation as to which there is no meritorious defense, see G.L. c. 231 §6F, all as a precondition to ob-

---

1. As an aside, it may be noted that, after drafting this "escrow agreement", the attorney who acted as escrow agent thereunder died. There is no evidence concerning what became of the deed from the Springs to Feldman and no one ever recorded it.

taining the fire insurance proceeds pursuant to this poorly drafted agreement. In short, the Springs are entitled to recompense themselves out of the fire insurance proceeds for the mortgage payments, the tax, the tax title, and water and sewer payments and for the demolition expenses, because the contract, properly construed, so provides.

Second, even if the contract cannot be construed to require such recompense for the Springs, they are entitled to such payment out of the fire insurance proceeds as third-party beneficiaries upon the insurance policy which should have been assigned to Feldman. **Rae v. Air Speed Co. Inc.,** 386 Mass. 187, 194-195 (1982). In the circumstances of this case, the Springs are "creditor beneficiaries" of Feldman's interest in the fire insurance proceeds. Restatement (2d) of Contracts (1981) §302 (1) (a), Comment b. That is, the performance of the insurance company's promise to pay on its insurance agreement will satify the obligation of Feldman to apy money to the Springs. Restatement (2d) of Contracts (1981) §302 (1) (a). Accordingly, wholly apart from the contract, Feldman owes the Springs out of the fire insurance proceeds the sums which they were obligated by law to pay on his behalf and which inured to his benefit.

Third, as an equitable remedy wholly apart from the contract, the Springs are entitled to reimburse themselves to avoid the unjust enrichment of Feldman. For aught that appears, the only item of value worth quarreling over in these proceedings is the proceeds of the fire insurance agreement. Feldman would be unjustly enriched were he allowed to keep the entire proceeds after the Springs, faced by his default, made payments he was contractually obligated to make. As to these payments the Springs were not volunteers and no such payments ought inure to Feldman's benefit.

ought inure to Feldman's benefit.

The payment by the Springs of $311.00 for liability insurance stands on a somewhat different footing, however. There is no evidence that the Springs were contractually obligated to purchase such insurance nor that the failure to maintain such insurance would violate the mortgage and cause the bank to foreclose. As to this payment, the Springs were, in fact, volunteers and they cannot claim recompense from Feldman. Deleting this $311 item from the items claimed by the Springs leaves an aggregate figure of $5,804.73. This sum the Springs are entitled to pay to themselves out of the fire insurance proceeds. The remainder must be paid over to Feldman within thirty days of the date of this memorandum.

The matter of interest remains to be considered. Had the Springs assigned the fire insurance policy to Feldman as they were contractually required to do, they would be entitled to interest at the statutory rate, from the date of commencement of this action since neither the dates of Feldman's specific breaches nor the demands for payment therefore have been established. G.L. c. 231, §6C. Here, however, the Springs themselves breached the contract between the parties by failing to assign the fire insurance policy to Feldman and so they have received the proceeds. Having had possession of the money in question during the pendency of the action, therefore, they are not entitled to any interest. Feldman, however, is entitled to interest on the remainder of the proceeds which must be paid to him after the Springs have reimbursed themselves, such interest to be computed at the statutory rate from the date of payment of the insurance proceeds to the Springs. It is at this date that an actionable breach occurred. While the Springs were contractually obligated to assign the fire insurance policy commencing on February 18, 1977, no harm occurred to Feldman until the proceeds payable thereunder[2] were paid to the Springs and not to him.

---

2. No one suggests that the proceeds paid by the insurance company are any thing other than full and complete satisfaction of its obligation under the fire insurance policy.

In sum, the Springs are entitled to pay themselves $5,804.73 out of the fire insurance proceeds held by them and are directed, within thirty days of the date of this memorandum, to pay the remainder of the proceeds to Feldman plus interest at the statutory rate upon such amount running from the date of the payment of the fire insurance proceeds to them.

It is so Ordered.

By the Court,
**William G. Young,**
**Justice of the Superior Court**